**EXHIBIT A**

CLINTON COUNTY COMMON PLEAS COURT
CLINTON COUNTY, OHIO

| | |
|---|---|
| WILLIAM CLUXTON<br>140 Church St.<br>New Vienna, OH 45159 | CASE NO. CVH 20230178 |
| Plaintiff, | JUDGE RUDDUCK |
| v. | COMPLAINT; JURY DEMAND<br>ENDORSED HEREON |
| DARNELL PATE<br>New Vienna Police Department<br>97 W. Main St.<br>New Vienna, OH 45159<br>*Individually and in his Official Capacity*<br>*as Marshal of the New Vienna*<br>*Police Department* | |
| and | |
| SERGEANT PETERS<br>New Vienna Police Department<br>97 W. Main St.<br>New Vienna, OH 45159<br>*In his Individual Capacity Only* | |
| and | |
| KATHI STONE, MAYOR,<br>VILLAGE OF NEW VIENNA<br>97 W. Main St.<br>New Vienna, OH 45159<br>*In her Official Capacity Only* | |
| Defendants. | |

FILED-COMMON PLEAS
2023 MAY 31 PM 1:59
CLINTON COUNTY
CYNTHIA R. BAILEY, CLERK

Now comes Plaintiff, William Cluxton ("Plaintiff"), by and through counsel, and for his Complaint states as follows:

## PARTIES

1. Plaintiff is an individual residing in Clinton County, Ohio.

2. Defendant Darnell Pate ("Pate") was at all times relevant to this action the Marshal of the Village of New Vienna. Pate is a "person" as defined by 42 U.S.C. § 1983 and at all times relevant to this action acted under color of law. Pate is being sued in both his individual and official capacities.

3. Defendant Sergeant Peters ("Peters") was at all times relevant to this action an Officer employed by the Police Department of the Village of New Vienna. Peters is a "person" as defined by 42 U.S.C. § 1983 and at all times relevant to this action acted under color of law. Peters is being sued only in his individual capacity.

4. Defendant Kathi Stone ("Stone") was at all times relevant to this action the Mayor of the Village of New Vienna ("Village"), which is a political subdivision of the State of Ohio and is located in Clinton County, Ohio. Stone is being sued in her official capacity only.

## FACTS

5. As Marshal, Pate served at the pleasure and under the supervision of Stone.

6. Pate was hired by Stone to be the Marshal only shortly before the incident at issue in this case.

7. Prior to being hired by Stone, Pate had a history of unlawful actions during employment as a police officer for other departments.

8. Stone either failed to perform an adequate background investigation of Pate which would have resulted in discovery of Pate's reckless and unlawful behavior, or hired Pate despite knowledge of Pate's reckless and unlawful behavior.

9. In the days before February 1, 2022, Stone directed Pate and the Police Department to enforce Village policy of requiring that vehicles with expired tags be towed from Village streets.

2

10. On February 1, 2022, Pate and Peters were patrolling the Village when they came upon Plaintiff's vehicle on the street in front of Plaintiff's residence.

11. Plaintiff was working in his garage at the time and came out of the garage into his fenced-in yard to see why police cars were in the street.

12. Upon seeing Plaintiff, Pate asked Plaintiff whether the vehicle was his. Upon confirmation from Plaintiff of his ownership, Pate then gave Plaintiff an order to move the vehicle or it would be towed.

13. Plaintiff, a 68-year-old man, lifelong Village resident and former member of Council, responded by telling Pate to "be careful."

14. Pate then entered Plaintiff's yard through the fence, despite Plaintiff's protestations.

15. Pate exerted physical force in attempting to handcuff Plaintiff.

16. Peters followed Pate into the yard and assisted in arresting Plaintiff by application of physical force.

17. One or both of Pate and Peters tased Plaintiff.

18. After Plaintiff had been physically assaulted, arrested and tased, Pate and Peters secured the handcuffed Plaintiff in a police vehicle.

19. Around that time, Stone arrived on the scene and consulted with Pate and Peters.

20. After consulting with Stone, Pate and Peters had Plaintiff's vehicle towed and drove Plaintiff around the Village in a cruiser, threatening to take him to the hospital for a psychological evaluation.

21. After some time, Pate and Peters apparently recognized the illegality of their conduct. They then drove Plaintiff to his home where he could get the keys to his vehicle, then drove him to the impound lot and allowed him to drive his vehicle home.

22. Plaintiff was presented with a bill for the vehicle towing and paid it.

23. Plaintiff was never charged with any offense.

24. Some time after the incident, Peters bragged about tasing a 70-year-old man.

25. As a direct and proximate result of Defendants' actions, Plaintiff sustained physical injuries.

26. As a further direct and proximate result of Defendants' actions, Plaintiff sustained severe and permanent emotional injuries, including but not limited to anguish, distress, humiliation and aggravation.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – Unlawful seizure and arrest – Pate and Peters)

27. Plaintiff incorporates his previous allegations as if fully rewritten herein.

28. At all relevant times herein, Pate and Peters were acting under color of law as agents, servants, and employees of the Village.

29. On or about February 1, 2022, Pate and Peters intentionally entered upon Plaintiff's property and restrained Plaintiff against his will and without probable cause or reasonable suspicion to believe that he had committed a crime.

30. As a result of Pate's and Peters' intentional acts, Plaintiff was subjected to a seizure as he was unable to terminate the encounter.

31. The intentional conduct of Pate and Peters described herein constituted a stop and/or arrest of Plaintiff amounting to an unlawful seizure within the meaning of the law.

32. The intentional conduct of Pate and Peters described herein was unnecessary and completely unreasonable under the circumstances, not justified according to law, including but not limited to the Fourth Amendment to the U.S. Constitution, and deprived Plaintiff of his federally protected right to be free from unlawful seizure, false arrest, and false imprisonment.

33. As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights actionable under 42 U.S.C. § 1983, Plaintiff suffered the serious and permanent injuries and damages described herein.

## SECOND CAUSE OF ACTION
(42 U.S.C. § 1983 – Excessive Force – Pate and Peters)

34. Plaintiff incorporates his previous allegations as if fully rewritten herein.

35. Pate and Peters, acting under color of law, used force on Plaintiff.

36. Pate's and Peters' use of force was unreasonable in light of the facts and circumstances at the time.

37. Pate and Peters knew that using force presented a risk of harm to Plaintiff, but recklessly disregarded Plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to Plaintiff.

38. As a direct and proximate result of the conduct of Pate and Peters as described herein, Plaintiff has sustained the severe and permanent injuries described herein.

## THIRD CAUSE OF ACTION
(42 U.S.C. § 1983 – *Monell* claim – Stone and Pate)

39. Plaintiff incorporates his previous allegations as if fully rewritten herein.

40. As Marshal, Pate was charged by law with enforcing government policy and for oversight of the functions and duties of the Police Department, under the supervision of Stone. R.C. 737.19.

41. As Mayor, Stone was charged by law with enforcement of all governmental policies. R.C. 733.30.

42. Prior to the events of February 1, 2022, Stone had actual or constructive knowledge of significant information which undermined Pate's credibility, character, and propensity for truthfulness.

43. Stone also had actual or constructive knowledge that Pate may have a tendency to utilize physical force quicker than other officers.

44. Despite this knowledge, Stone failed to adequately train and supervise Pate to ensure that Pate properly carried out his official duties in effectuating lawful seizures, searches, arrests, detentions of its citizens, and for using force on citizens.

45. Stone's failure to adequately train and supervise Pate amounted to deliberate indifference to the fact that inaction would obviously result in the violation of its citizens' Fourth Amendment rights to be free from unlawful searches, seizures, arrests, detentions, and excessive force at the hands of Pate.

46. Stone's failure to adequately train and supervise Pate proximately caused the violation of Plaintiff's Fourth Amendment right to be free from unlawful searches, seizures, arrests, detentions, and excessive force at the hands of Pate.

47. Furthermore, the joint efforts of Stone and Pate to enforce their policy regrading expired license tags proximately caused the confrontation with, illegal seizure of and excessive force used on Plaintiff.

48. Stone and Pate are therefore liable in their official capacities under the *Monell* doctrine for the violations of law and harms caused by the policy.

49. As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights, Plaintiff has sustained the severe and permanent injuries described herein.

## **FOURTH CAUSE OF ACTION**
(Ratification – Stone)

50. Plaintiff incorporates his previous allegations as if fully rewritten herein.

51. At all times relevant to this action, Stone was the head executive of the Village and was responsible for enforcement of all governmental policies. R.C. 733.30.

52. Stone knew or should have known that there were significant concerns about the conduct of Pate prior to February 1, 2022.

53. Stone specifically knew of significant information which undermined Pate's credibility, character, and propensity for truthfulness.

54. Despite these concerns, Stone ratified Pate's conduct by endorsing and encouraging his interaction under circumstances personally observed by Stone.

55. As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights actionable under 42 U.S.C. § 1983, Plaintiff was deprived of his Fourth Amendment right to be free from unlawful searches, seizures, arrests, detentions, and excessive force at the hands of Pate and Peters.

**WHEREFORE,** Plaintiff respectfully demands judgment against Defendants in excess of $25,000, jointly and severally, for compensatory damages to be proved at trial, punitive damages because the actions of Defendants were malicious and intended to cause Plaintiff severe harm, reasonable attorney's fees, costs and all other relief to which he may be lawfully entitled.

Respectfully submitted,

*/s/ Konrad Kircher* by BSU (0081291)
Konrad Kircher (0059249)
Ryan J. McGraw (0089436)
RITTGERS & RITTGERS
12 East Warren Street
Lebanon, Ohio 45036
Tel.: 513/932-2115
Fax: 513/934-2201
konrad@rittgers.com
ryan@rittgers.com
*Attorneys for Plaintiff*


*/s/ Blaise Underwood*
Blaise Underwood (0081291)
Rose & Dobyns Co., L.P.A.
97 N South Street
Wilmington, Ohio 45177
937.382.2838
937.382.7748 – fax
bunderwood@rosedobyns.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiffs hereby demands trial by a jury of his peers as to all issues so triable herein.

*/s/ Konrad Kircher* by BSU (0081291)
Konrad Kircher (0059249)

8